SAMUEL COLGATE AND OTHERS, RESPONDENTS, *v.* THE PENNSYLVANIA COMPANY, APPELLANT.

*Common carrier — liability of, for delivering property to the consignee, in part before and in part after he has assigned the bills of lading —1858, chap. 326, and 1859, chap. 353 — Usage — when evidence of, is inadmissible to control the terms of the bill of lading.*

Twelve hundred and fifty barrels of oil were delivered, in another State, to the defendant, a common carrier, to be delivered at the city of New York to J. F. O'Shaughnessy, and bills of lading to that effect were made and delivered upon the receipt of the oil. These bills of lading were subsequently transferred and delivered to the plaintiffs for moneys advanced by them to the consignee of the oil. Before any notice had been given to the defendant of the transfer of the bills of lading, or any demand for the oil had been made in the plaintiffs' behalf, it delivered it, under the authority and direction of O'Shaughnessy, the consignee, to other persons. Part of the oil was so delivered before and part after the time when the bills of lading were transferred to the plaintiffs.

*Held,* that under the provisions of chapter 326 of 1858, and chapter 353 of 1859, relating to bills of lading, the defendant was liable as for a conversion of so much of the oil as was delivered after the bills of lading had been transferred to the plaintiffs, but not for so much thereof as had been delivered prior thereto.

*Quære,* as to whether, although the plaintiffs could not recover for the conversion of the oil delivered before the time of the transfer, they might not have recovered for it under the contract contained in the bill of lading.

That as neither the law nor the contract made by the bills of lading were in any respect uncertain or ambiguous, evidence of usage could not be received either to control or to affect the rights of the parties.

APPEAL from a judgment in favor of the plaintiff, recovered on the report of a referee.

The action was brought to recover damages for the conversion of a quantity of cotton seed oil which was claimed to have belonged to the plaintiffs.

*Charles B. Alexander,* for the appellant.

*William G. Wilson,* for the respondents.

DANIELS, J.:

The judgment recovered was for the value of 1,250 barrels of cotton seed oil. The oil had been delivered in different parcels to the defendant as a carrier of property. It was received by it at Memphis, Tennessee, and Little Rock, in the State of Arkansas, to be delivered at the city of New York to J. F. O'Shaughnessy, and bills of lading to that effect were made and delivered upon the receipt of the oil. These bills of lading, so far as they are in controversy in this action, were transferred to the plaintiffs by delivery for moneys advanced by them to the consignee of the oil, and that delivery, even without an indorsement of the bills themselves, transferred the right to the property, so far as it was then in the defendant's possession, to the plaintiffs. (*The Merchants' Bank of Canada* v. *Union R. R. Co.,* 69 N. Y., 373; *City Bank* v. *Rome, etc., R. R. Co.,* 44 id., 136; *National Bank* v. *Dearborn,* 115 Mass., 219.)

During the time in which these transfers were made, 800 barrels of the oil were in the possession of the defendant, and were consequently subject to the plaintiffs' rights arising out of the transactions in which they received the bills of lading. But before notice was

given to the company of the transfer of the bills, or any demand was made in their behalf for the oil, it was under the authority and direction of O'Shaughnessy, the consignee, delivered for him to the Hudson Oil Works, in South Brooklyn.    The plaintiffs afterwards demanded it from the defendant upon their bills of lading ; but as no delivery could then be made, they failed to obtain the oil.

It is not requisite that it should now be decided whether notice, of the transfer of the bills of lading, to the carrier was necessary to complete the title of the plaintiffs and thereby protect them from interference with the property by the consignee.    Upon that subject there is an apparent conflict in the authority.    The case of *City Bank* v. *Rome, etc., R. R. Co. (supra)*, intimating very clearly that the carrier cannot safely deliver the property until it may be demanded by a party under the authority of the bill of lading. (Id., 141.)    While in *Glyn* v. *East and West India Dock Co.* (5 Queen's Bench Division, 129), and other English cases, a different opinion seems to have been entertained.    But in this State this subject has been regulated by statutes.    The provisions enacted upon this subject are contained in chapter 326 of the Laws of 1858, and chapter 353 of the Laws of 1859, and they in terms as well as in effect provide that no property carried under a bill of lading shall be delivered except upon its surrender and cancellation.    The object of these statutes was to protect the rights of persons advancing money and dealing with the consignee upon the faith and delivery of the bill of lading.    And to secure that end, they made it unlawful for the carrier to deliver the property to any person failing to produce and cancel the bill of lading which had been issued for it. These provisions were violated by the delivery of the 800 barrels of oil, and by their violation the oil was delivered to a person not entitled to receive it, and that, under the authorities, was a conversion of the property by the defendant.    For a delivery of the goods by the carrier to a wrong person, even though it may have occurred by mistake, without any intentional wrong, is a conversion of the property.    (Angel on Carriers [5th ed.], § 432 ; *Viner* v. *N. Y., etc., Steamship Co.*, 50 N. Y., 24 ; *Alderman* v. *Eastern R. R. Co.*, 115 Mass., 233.)

Neither the law nor the contract made by the bills of lading was in any respect uncertain or ambiguous, and the rights of the parties

arising out of their dealings have been clearly defined, and the case, therefore, was not one in which evidence of usage could be received either to control or to affect the rights of the parties. (*Bradley* v. *Wheeler*, 44 N. Y., 495.)

As the facts were established, therefore, the plaintiffs were rightly held to be entitled to recover to the extent of the value of 800 barrels of oil.

But as to the remaining 450 barrels, the transactions were materially different. For the carrier had delivered that oil under the direction of the consignee before he transferred the bills of lading for it to the plaintiffs. At the time of their delivery, he was the only person who was entitled to receive the oil. The plaintiffs had no possible interest in it. It was, on the contrary, delivered to the person who was rightfully entitled to its possession, and the fact that the carrier omitted to take up the bills of lading, which enabled the consignee afterwards to transfer them to the plaintiffs, could not render the defendant's acts in delivering this oil wrongful as to the plaintiffs. By the transfer of these bills of lading the plaintiffs were directly substituted in the place of the consignee, having his rights to the property and no others. (*Trustees, etc.,* v. *Wheeler*, 61 N. Y., 88, 105 ; *Crane* v. *Turner*, 67 id., 437.) And as he had no right of action against the defendant for the wrongful delivery of the 450 barrels of oil, they were subject to the same disability. Possibly a recovery in their favor upon the contract contained in the bills of lading might be maintained, but there was obviously no conversion of this property as to them, as it had been actually delivered to the person at the time entitled to receive it and before they became interested in the shipments or the bills of lading. As to this 450 barrels of oil, the plaintiffs could maintain no action on the basis of the fact that it had been wrongfully converted by the defendant, for such was not the character or legal consequences of the delivery of this portion of the oil to the consignee. The value of this 450 barrels should not have been included in the judgment, and as it was, the judgment should be reversed, and a new trial ordered, with costs to abide the event, unless the plaintiffs within twenty days after notice of the order to be entered on this decision, stipulate to reduce the recovery to the value of the 800 barrels of oil, with interest upon it, and in case such stipulation shall be given,

then the judgment as so reduced should be affirmed, without costs to either party.

DAVIS, P. J., and BRADY, J., concurred.

Judgment modified as directed in opinion, and affirmed as modified, without costs.