WILLIAM R. HONSUCLE *vs.* STANLEY RUFFIN & another.

Suffolk.   November 9, 1898. — January 7, 1899.

Present: FIELD, C. J., HOLMES, MORTON, & LATHROP, JJ.

*False Representations — Evidence — Damages — Instructions.*

In an action for false representations, by which the plaintiff was induced to buy stock of a corporation, to the effect that a certain amount of the capital had been paid in, the plaintiff testified to the representations, and also put in a letter of the defendant written to a third person soon after the conversation, stating that the corporation had no stockholders. The defendant was then asked by his counsel to explain what he meant by the expression; but any explanation was excluded. *Held,* that the rule requiring the excepting party to show what the testimony was expected to be must be applied.

*It seems* that, if a writing is put in merely as an admission, it may be explained by the writer, even though the explanation contradict the proper construction of the written words.

An instruction to the jury, in an action for false representations in the sale of stock, that if the plaintiff ought to have discovered the truth before he put in the money, they should find for the defendant, is sufficiently favorable to the latter.

In an action for false representations, by which the plaintiff was induced to buy

stock of a corporation, to the effect that a certain amount of the capital had been paid in, the defendants testified that they had put in the safe connected with the corporation's office several hundred dollars of their own money which had been spent for rent, tools, and trips to another State in behalf of the corporation. An instruction to the jury was asked, that if the money "was used by the defendants in the furtherance of the business of the corporation with the intention that it should be applied to the payment of stock as cash, the certificate of stock to be issued later, then they would not be justified in finding that it was a liability of the company." *Held,* that the refusal of this instruction afforded no ground of exception.

TORT, for false representations in the sale of stock of the Eastern Construction Company. At the trial in the Superior Court, before *Hardy*, J., the jury returned a verdict for the plaintiff; and the defendants alleged exceptions, which appear in the opinion.

*F. K. Linscott*, for the defendants.

*S. R. Jones*, for the plaintiff.

HOLMES, J. This is an action for false representations by which the plaintiff was induced to buy stock of a corporation. The representations relied on were to the effect that a certain amount of the capital had been paid in. At the trial the plaintiff testified to the representations, and also put in a letter of the defendant Ruffin, written to a third person soon after the conversation, stating that the corporation had no stockholders. Ruffin was asked by his counsel to explain what he meant by the expression, but the court excluded any explanation, on the ground that the meaning was plain and the letter must speak for itself. The defendants excepted.

We should be of opinion that this evidence ought to have been admitted, if that were the only question before us. An entirely different principle applies from that which would govern the interpretation of a contract, will, or other instrument, prepared with a view to legal effect, or relied on as founding an estoppel. The letter was important merely as showing knowledge, or a certain state of mind with regard to the condition of the company, for the purpose of establishing one element of the alleged fraud. Hence, whereas in the case of wills, contracts, etc., we ask what the words used would mean in the mouth of one writing the language in a normal way under the circumstances, here the meaning of the individual, however inconsistent with the words, his actual state of mind, is the thing to be found, and there is

no ground. of statute, consideration of the rights of others, or policy, to limit our mode of inquiring into it. In *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, the majority of the court went much further than this. But the exceptions do not show what explanation was expected. It is difficult to imagine the possibility of any explanation as distinguished from a statement that the words were intended to deceive the Attorney General's office, to which the letter was addressed. An explanation of the latter sort requires no particular favor, and short of that it is hard to see how the defendants have been harmed by the exclusion. Although always reluctant to do so, we feel bound to apply the rule requiring the excepting party to show what the testimony was expected to be. *Commonwealth.* v. *Smith,* 163 Mass. 411, 429, and cases cited.

An instruction was asked that the rule of damages was the difference between the actual value of the property at the time of the purchase and its value if it had been what it was represented to be. *Whiting* v. *Price, ante,* 240. The jury were instructed that it was the difference between the par value of the stock which the plaintiff paid and its value when he discovered the fraud. But the jury made the time selected immaterial by finding, in answer to questions, that the stock was of no value either at the time of the purchase or at the date of the writ, as these findings meant that the stock was of no value at any time after the purchase.

Another instruction asked was, that if the plaintiff by the use of reasonable diligence could have ascertained the truth or falsity of the alleged declarations and did not do so, he could not recover. The judge told the jury that, if the plaintiff ought to have discovered the truth before he put in the money, they should find for the defendants. This instruction sufficiently saved the defendants' rights. *Whiting* v. *Price, ante,* 240.

The defendants testified that they had put in the safe connected with the company's office some thirteen or fourteen hundred dollars of their own money, which, except one hundred dollars, had been spent for rent, tools, and trips to New York in behalf of the company. An instruction was asked, that if the money "was used by the defendants in the furtherance of the business of the corporation with the intention that it should be applied to

the payment of stock as cash, the certificate of stock to be issued later, then they would not be justified in finding that it was a liability of the company." We should be unwilling to grant a new trial for the refusal of this ruling. For, without considering nicely what would amount to paying the money in to the corporation, it is enough to notice that the question whether anything was done which was intended as a payment, or which amounted to putting the money into an enclosure of the company with a *bona fide* renunciation of control over it except through the corporation, was omitted from the request. It was quite possible that the acts testified to, if done, did not import and were not accompanied by a renunciation of control. *Commonwealth* v. *Ryan*, 155 Mass. 523, 529, 530. If the defendants simply spent their money on travelling expenses, etc., with the intent that their expenditures should work as payments on account of stock, while it might be that they would have a claim against the corporation for reimbursement, their intent was ineffectual under the law. It did not bind the corporation, or amount to paying in in cash. See Pub. Sts. c. 106, §§ 47, 49.          *Exceptions overruled.*